**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>     **Plaintiff,**<br><br>     vs.<br><br>**ROBERT S.W. TINSLEY,**<br>     **Defendant.** | **CASE NO. 2:20-MJ-201**<br><br>**MAGISTRATE JUDGE CHELSEY M. VASCURA** |

## UNITED STATES' MEMORANDUM IN OPPOSITION
## TO DEFENDANT TINSLEY'S MOTION FOR RELEASE

The United States respectfully submits this memorandum in opposition to defendant TINSLEY's motion to revoke detention order (ECF No. 13). The facts here are straightforward: TINSLEY was arrested on a narcotics charge which carries a statutory presumption of detention, subject to the weighing of factors under 18 U.S.C. § 3142(g). It should be noted that one day before his arrest, Mr. TINSLEY was observed exiting a residence in which a multiple kilograms of narcotics were subsequently seized, along with four firearms. (Complaint at ECF No. 2)

After a detention hearing held before Your Honor on March 19, 2020, Pursuant to § 3142(g), this Court considered the nature and circumstances of the offense charged, the strength of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to the community which would be posed by the defendant's release. All of these factors weighed against the release of TINSLEY in addition to the statutory presumption, and TINSLEY was ordered detained as danger to the community, a result recommended by Pretrial Services, and presumed under Congress' guidance as set forth in 18 U.S.C. § 3142(e).

TINSLEY's motion for release from custody should be denied because there is no basis

to say that the factors which drove the Court's detention determination have changed.

While counsel for TINSLEY details that there is a national health crisis involving the COVID-19 virus, the motion lacks any individualized evidence of any change in circumstances warranting reconsideration of the detention issue as to TINSLEY. The motion offers hypothetical scenarios within a jail setting that *could* impact TINSLEY's health but no evidence that anything of the sort has yet occurred. TINSLEY cites to no case law or authority suggesting that a possible future physical condition, not yet manifested, is a valid reason for release.

The U.S. Marshals Service has instituted significant precautions regarding their interaction with prisoners and likewise all jail facilities are enacting stringent measures to reduce the risk of virus spread. Included among these efforts are strict limitations on visitation, regular screening of any new prisoners, lessening intake of minor felony arrests (unlike the instant case) and specialized health training and procedures for correctional officers. Upon information provided to the Marshals and the U.S. Attorney's Office, Franklin County Jail has reviewed the directives and recommendations of the Centers for Disease Control and Prevention (CDC), the Ohio Department of Health, the Delaware County Department of Health, the Ohio Department of Rehabilitation and Correction Bureau of Adult Detention, and the Governor's Office and is working to best implement those recommendations.

Additionally, as with all correctional facilities of a certain age, the Franklin County Jail has experience protecting against disease transmission and outbreak. During the recent outbreaks of SARS, Ebola, H1N1, and avian flu, the Jail employed additional screenings and precautions. The Jail had no confirmed cases. The precautions the Jail is taking for COVID-19 exceed those the Jail took for these other recent outbreaks. Jail staff are accustomed to controlling more common viral diseases, such as seasonal flu, and has established procedures of isolation and medical

2

monitoring. Although the Jail has had confirmed cases of seasonal flu and other more common diseases, it has had no major viral outbreaks. For COVID-19, the Jail has adopted quarantine procedures, set in place by the Jail's health director. It has set aside cells for possible quarantine if necessary.

In essence, in relying on the existence of the COVID-19 virus to bolster his claim for release, the premise of the instant motion for release – that there are health risks attendant in incarceration, and that detention has made it more difficult for the defense to meet with his client in preparation for trial – would similarly apply to every prisoner in the federal system and by extension all should be released for fear of hypothetical exposure. Given this unreasonable result, the motion must fail on its face. Further, releasing Mr. TINSLEY from a confined and controlled population into the community also could have potential additional health implications which could exponentially increase the risk of exposure to numerous others.

In short, TINSLEY has offered no significant evidence that he is somehow more at risk and/or more susceptible to potential exposure than any other federal prisoner. Absent evidence to the contrary, the detention Order should not be disturbed. The COVID-19 virus is clearly impacting every aspect of society and release of a defendant into the community is certainly no guarantee of safety and good health. Defendant TINSLEY has been properly determined to be a danger to the community and a risk of flight. Under these circumstances, the issue of detention does not warrant revisiting and TINSLEY should remain detained.

    DAVID M. DeVILLERS
    United States Attorney

    s/Michael J. Hunter
    MICHAEL J. HUNTER
    Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Response in Opposition was served on attorney for defendant, Gerald Noel, via this Court's ECF system on April 7, 2020.

s/Michael J. Hunter
MICHAEL J. HUNTER
Assistant United States Attorney
